United States District Court
Eastern District of New York

1:18-cv-05257

---

Keith Kennedy individually and on behalf
of all others similarly situated

                              Plaintiff

              - against -                              Complaint

Essentia Water, LLC

                              Defendant

---

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Essentia Water, LLC ("defendant") manufactures, distributes, markets, labels and sells water products under the "Essentia" line in various sizes, including 33.8 oz (1 L).

2.    The Products emphasize their ability to provide superior hydration, as measured by hydration markers, compared to non-Essentia products, thereby commanding a premium price.

3.    The principal display panel contains the product name "Essentia," the statements "overachieving H2O," "Ionized Hydration," "9.5 pH or higher" and the logo of a "plus symbol" squared off by red bars of varying length.



4.    The Information panel contains the logo and descriptive text:

We're here to put a flag in the ground and tell the world that a better you starts with a better water.  **#EssentiaNation**

What Makes Essentia Better? Our proprietary process turns water from any source into supercharged ionized alkaline water.  It's even too pure to be tested by pH strips.

 

5.     The digital and print promotional materials emphasize the Product's special ability to achieve hydration, beyond traditional tap or bottled water.



6.     The Product's website claims to have scientific support for the claims it delivers superior hydration and boasts the support of medical doctors.

3

We believe proper hydration increases human potential. Essentia's proprietary ionization process creates a clean and smooth tasting 9.5pH or higher alkaline water that's better at rehydrating. We have backed it up with solid science.+ Essentia was included in the first ever hydration study of its kind.

The clinical trial, published in the Journal of the International Society of Sports Nutrition (JISSN), measured how well a leading bottled water and Essentia Water rehydrated participants after moderate aerobic exercise. The results showed that Essentia Water was more effective at rehydrating.+

"These scientific findings reinforce feedback we've heard for several years from doctors, athletes, and all kinds of overachievers aiming to be at the top of their game. Essentia Water helps them rehydrate better," said Ken Uptain, founder and CEO of Essentia Water.

## overachieving H$_2$O

The result is supercharged ionized alkaline water that has been clinically shown to be more effective at rehydrating.+

LEARN MORE

Essentia is the only bottled water listed in the Physicians' Desk Reference, commonly recommended by physicians for hydration.

7.    Defendant's logo is a clever amalgam of the symbols for the International Red Cross and the Swiss Army knives made by the Victorinox company.

8.    Consumers are familiar with the Red Cross logo being synonymous with "first aid."

9.    Likewise, familiarity with the white Swiss Army Knife cross emblazoned on a red shield is a symbol of protection and ingenuity, since its namesake penknife incorporates several blades and other tools such as scissors and a screwdriver.

| Red Cross | Swiss Army Knife | Essentia |
|---|---|---|



10.     Defendant's logo is viewed in conjunction with the claims that the Product's superiority in the realm of hydration is backed by scientific rigor, causing a reasonable consumer to believe that Essentia will be more effective and efficient in supplying hydration.

11.     Defendant relies in part on its study, "Effect of electrolyzed high-pH alkaline water on blood viscosity in healthy adults" for support that Essentia, due to its pH, is superior to non-alkalinized water, for effectiveness of hydration.  *Journal of the International Society of Sports Nutrition* 13.1 (2016): 45.

12.     The study compared persons who consumed alkaline water with a control group that consumed purified reverse osmosis water, following dehydration because of exercise.

13.     The conclusion was that the alkaline water supplied superior hydration, based on the reduction in blood viscosity vis-à-vis the control group.

14.     Blood viscosity is influenced by hematocrit, red blood cell deformability, red blood cell aggregation, and plasma viscosity, but not impacted by discrete nutritional disturbances from consuming a non-medicinal beverage.

15.     Moreover, dehydration can cause an increase in blood viscosity (thickness), so that an increase in water will reduce dehydration.

16.    The study's conclusion – that the alkalinized water reduced blood viscosity greater than the control water – is unrelated to the water being alkalinized.

17.    This is because the control group was given purified reverse osmosis water, which has had all minerals and electrolytes removed, while the alkalinized water notably possesses electrolytes, though they are purportedly present "for taste."

18.    Alkalinity is in relation to "acidic" and these terms refer to the pH level of different types of foods and beverages.

19.    The acidity or alkalinity of any solution is indicated on the pH scale ranges from 0 (strongly acidic) to 14 (strongly basic or alkaline).

20.    A pH of 7.0 is neutral and pH of blood is slightly basic (7.35 – 7.45).

21.    Food and beverages are unable to influence the pH of blood or intra- or extra-celluar liquids, as minor deviations cause serious sickness or death.

22.    The lungs, kidneys and buffer systems to regulate the blood's acid-base balance.

23.    The kidney responds to disturbances of the acid base balance through changes in H+ secretion and $HCO_3-$ reabsorption and production on a time scale of hours to days.

24.    The respiratory center in the medulla oblongata of the brain responds to pH and $CO_2$ within minutes, adjusting the breathing rate.

25.    The chemical buffer systems in both the extracellular and intracellular compartments act immediately to prevent excessive fluctuations of the blood pH.

26.    The most important pH buffer system in the blood involves carbonic acid (a weak acid formed from the carbon dioxide dissolved in blood) and bicarbonate ions (the weak base).

27.    All consumed food travels to the highly acidic stomach, with a pH of c. 3.0.

28.    The low pH is necessary to break it down and sterilize any bacteria ingested.

29.    After leaving the stomach, the matter goes to the intestines where it is neutralized and slightly alkalized by pancreatic solutions.

30.    As a result, everything consumed - once it gets to the intestines–is roughly the same pH, regardless of its pH at the time it was consumed.

31.    If the pH of blood changes slightly, it will cause serious medical disturbances requiring hospitalization.

32.    Extracellular levels of other ions such as Na, K, Ca and inorganic phosphate are also barely affected by fluctuations in their respective nutritional intakes, unless their variations are very large in quantity and extend over prolonged periods.

33.    The only impact of consuming a product with a pH of 9.5 or above would be to alter the pH of the excreted urine to be more alkaline.

34.    Moreover, significant amounts of the Product would have to be consumed to even achieve such a transient change in the pH of the blood, which would be almost impossible to do in a short period of time before the body adjusts the pH back to its normal level.

35.    The claims are literally false because all reasonable scientists agree that mammalian physiology allows for no causality between alkalinized foods and a change in blood viscosity, especially none that can occur in a manner described in the study.

36.    That the alkalinized water in the study achieved a reduction in blood viscosity is of no significance because (1) any effect from the alkalinity of the water is negated by the acids present in the stomach and (2) the presence of electrolytes likely caused the water to be absorbed better by the body.

37.     The latter reason is why global health organizations promote rehydration solutions which contain sodium and electrolytes to combat potentially fatal dehydration in developing countries as opposed to providing purified reverse osmosis water.

38.     The studies purporting to substantiate defendant's claims are poorly designed, incredible and represent the view of a minority of scientists.

39.     Defendant's representations that its Product is any more effective at providing hydration than other non-alkalinized due to its pH level are false and misleading.

40.     Excluding tax, the Products cost no less than $2.99 for 33.8 oz, a premium price compared to non-alkalinized water.

<u>Jurisdiction and Venue</u>

41.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

42.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

43.     This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

44.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

45.     A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Class Allegations</u>

46.     The classes consist of all consumers in the following states:  <u>all</u>, <u>New York</u> who purchased any Products with actionable representations during the statutes of limitation.

47.     A class action is superior to other methods for fair and efficient adjudication of this

controversy.

48.    The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

49.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

50.    Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

51.    Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

52.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

53.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

54.    Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

55.    Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

Parties

56.    Plaintiff is a citizen of Kings County, New York.

57.    Defendant is a Delaware limited liability company with its principal place of business in Bothell, Washington, California, and no member thereof is a citizen of New York.

58.    In 2017 and/or 2018, plaintiff purchased one or more of the Products for personal consumption, for no less than $2.99 per 33.8 oz, excluding tax, at a store located within this district.

59.    Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the

misleading representations.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

60.    Plaintiffs incorporates by references all preceding paragraphs.

61.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

62.    Plaintiff desired to purchase products which provided the benefits described by defendant.

63.    Defendant's representations are false, unfair, deceptive and misleading for the reasons described herein.

64.    The representations and omissions were relied on by plaintiff and class members, who paid more than they would have otherwise, causing damages.

<u>Negligent Misrepresentation</u>

65.    Plaintiff incorporates by references all preceding paragraphs.

66.    Defendant misrepresented the ability of the Products to achieve the claimed effects.

67.    Defendant had a duty to disclose, in a manner prescribed by law, that its Products were not capable of providing said effects.

68.    At the time of the representations, defendant knew or should have known same were false or misleading.

69.    Defendant negligently misrepresented and/or negligently omitted material facts.

70.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

71.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

72.    Plaintiff incorporates by references all preceding paragraphs.

73.    Defendant manufactures and sells waters which have a higher pH level than most water products.

74.    Defendant warranted to plaintiff and class members that the Products were superior to non-alkaline waters in providing hydration, when this was not truthful and was misleading.

75.    The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

76.    Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

<u>Fraud</u>

77.    Plaintiff incorporates by references all preceding paragraphs.

78.    Defendant's purpose was to mislead consumers who seek foods which have a functional and beneficial effect.

79.    Defendant is capitalizing on consumer's shift from sugary juices and carbonated soft drinks to calorie-free beverages with beneficial properties.

80.    Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have otherwise, entitling them to damages.

<u>Unjust Enrichment</u>

81.    Plaintiff incorporates by references all preceding paragraphs.

82.    Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE,** plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant(s) to correct such practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:   September 19, 2018

                                                  Respectfully submitted,

                                                  Sheehan & Associates, P.C.
                                                   /s/Spencer Sheehan
                                                  Spencer Sheehan
                                                  891 Northern Blvd., Suite 201
                                                  Great Neck, NY 11021
                                                  Tel: (516) 303-0552
                                                  spencer@spencersheehan.com

                                                  Levin-Epstein & Associates, P.C.
                                                   /s/Joshua Levin-Epstein
                                                  Joshua Levin-Epstein
                                                  1 Penn Plaza, Suite 2527
                                                  New York, NY 10119
                                                  Tel: (212) 792-0046
                                                  joshua@levinepstein.com

1:18-cv-05257
United States District Court
Eastern District of New York

Keith Kennedy individually and on behalf of all others similarly situated

Plaintiffs

- against -

Essentia Water, LLC

Defendant(s)

# Complaint

Sheehan & Associates, P.C.
891 Northern Blvd., #201
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: September 19, 2018

/s/ Spencer Sheehan
Spencer Sheehan